**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1904-16T1

Qian Zhong,

    Plaintiff-Respondent,

v.

Xue Ye,

    Defendant-Appellant.

_____

Submitted December 6, 2017 — Decided August 2, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1461-04.

Cores & Associates, LLC, attorneys for appellant (Melanie Szuba Appleby, on the brief).

Qian Zhong, respondent pro se.

PER CURIAM

    Plaintiff Qian Zhong and defendant Xue Ye were married in 1990, and had two children, Cathy, who was born in 1997,[1] and Adam,

_____

[1] Cathy passed away in 2005.

who was born in 2000.[2]   The Chancery Division, Family Part dissolved the parties' marriage in a Final Judgment of Divorce (JOD) entered on June 17, 2006.   The JOD incorporated a comprehensive Property Settlement Agreement (PSA) that the parties negotiated with the assistance and advice of their respective independent counsel.   The PSA addressed all of the issues related to the dissolution of the marital estate, awarded defendant physical custody of the children and joint legal custody to both parties, provided parenting time to plaintiff, and established plaintiff's child support and alimony obligations.   The PSA also obligated plaintiff to provide and maintain health insurance coverage to accommodate Adam's special needs related to his severe neurological problems that restrict his mobility and require constant personal attention.

The legal termination of the marriage did not assuage the intensity of the rancorous relationship the parties continue to have as parents.   The parties have filed numerous post-judgment motions before the Family Part and three appeals before this court. See Qian Zhong v. Xue Ye, No. A-2480-10 (App. Div. Mar. 15, 2012); Qian Zhong v. Xue Ye, No. A-0674-10 (App. Div. Mar. 15, 2012);

---

[2]   We use pseudonyms to refer to the children to protect their privacy and preserve the confidentiality of the information presented to the Family Part.   R. 1:38-3(d).

<u>Qian Zhong v. Xue Ye</u>, No. A-1429-09 (App. Div. Sept. 21, 2010). Thus far, these legal determinations have not resolved the underlying cause of the problems.

In this fourth appeal, defendant seeks review of an order entered by the Family Part on November 29, 2016, denying her motion to: (1) modify child support; (2) award her sole legal custody of Adam; (3) compel plaintiff to reimburse her for expenses she incurred as a result of plaintiff's decision not to exercise his parenting time with Adam; and (4) compel plaintiff to provide health insurance for Adam indefinitely. Defendant sought this relief after learning plaintiff had relocated to China. The motion judge decided defendant's motion based only on the parties' conflicting certifications. The judge explained the basis of her decision in a statement of reasons, which was later supplemented by an Amplified Opinion submitted pursuant to <u>Rule</u> 2:5-1(b), after defendant filed her Notice of Appeal. Based only on the parties' conflicting certifications, the judge did not find a sufficient change in circumstances to warrant any of the relief defendant sought.

After reviewing the record developed before the Family Part, we disagree with the motion judge's conclusion that plaintiff's relocation to China does not constitute a significant change in circumstances. Plaintiff's unilateral decision to relocate to

China makes him unavailable to participate in Adam's life and leaves defendant with the sole responsibility to provide the emotional support and special care required by their severely disabled son. Measured against the parenting time arrangement and other matters related to Adam that the parties negotiated and agreed to abide by in the PSA, plaintiff's relocation to China constitutes a significant departure from these court-sanctioned provisions.

We thus reverse the order denying defendant's motion and remand the matter for the court to conduct a plenary hearing to allow the parties to testify and develop a proper record from which the judge can determine what changes are needed to accommodate this new parenting arrangement. The judge should order the parties to file updated Case Information Statements (CIS) and consider permitting limited pre-hearing discovery related to Adam's current and future needs. We leave it to the discretion of the court to determine the form and scope of such discovery. Before we address the merit of the arguments raised by defendant, we will briefly describe the procedural journey that preceded the order under review.

On July 25, 2016, defendant filed a pro se emergent Order to Show Cause (OTSC) after she learned that plaintiff was planning to relocate to China. Defendant sought an order from the Family

Part to compel plaintiff to maintain insurance coverage for Adam "indefinitely" and grant her sole custody of the child. Due to his severe neurological limitations, Adam required the assistance of a nurse during those times plaintiff did <u>not</u> exercise his right to parenting time with his son. Defendant requested the court to order plaintiff to reimburse her for the cost she allegedly incurred to hire a nurse for this purpose from 2013 to 2016. Defendant also petitioned the court to require plaintiff to establish a "fund" to cover the cost of future derelictions of his parenting time obligation.

On July 27, 2016, a Family Part judge granted defendant's OTSC, in part. The judge granted defendant "full authority" to act on Adam's behalf concerning "issues related to medical treatment and medical insurance[.]" Toward that end, the judge authorized defendant "to communicate directly with the insurance company concerning all matters relating to [Adam's] medical coverage in light of [plaintiff's] alleged departure to China[.]" The court denied without prejudice the balance of defendant's requests.

On August 2, 2016, the return date of the OTSC, a different judge found defendant was not entitled to seek judicial intervention under an OTSC because she did not meet the standard for emergent relief under <u>Crowe v. DeGioia</u>, 90 N.J. 126 (1982).

The judge noted that both parents had joint legal custody pursuant to the PSA. Defendant had "access and privilege to all health care information and medical insurance coverage regarding her son . . . [including] the ability to make any claims or appeal any coverage denials . . . ." The judge ordered that any further request for relief of this nature should be made by motion practice. On August 3, 2016, defendant filed a post-judgment motion seeking the same relief that she requested in the OTSC.

From this point forward, the parties submitted lengthy, conflicting certifications to the motion judge that retraced many of the most contentious parts of their acrimonious post-judgment interactions. The parties were both pro se. From his residence in China, plaintiff submitted a certification dated October 1, 2016, contesting defendant's factual claims for relief. Plaintiff also attached to his certification unauthenticated documents he labeled "exhibits." Defendant submitted a reply certification dated October 11, 2016, replete with factual allegations that conflict with plaintiff's assertions. Both parties cited various sections of the PSA that they claimed supported their legal position before the court.

In an order prepared by the court, dated November 29, 2016, the motion judge for the most part denied defendant any relief. However, the judge granted defendant's request "to compel

A-1904-16T1

plaintiff to disclose [his] address, phone number, email address, and fax number promptly after each change overseas . . . ." The court also granted defendant's request "to serve each other via email while plaintiff is living overseas . . . ."[3] The judge made clear, however, that this did not absolve the parties of their obligation to "properly serve the other party" pursuant to Rule 1:5-2 and Rule 4:4-4.

In the Statement of Reasons attached to the order, the motion judge explained the reasons for denying defendant's application to compel plaintiff to reimburse her for the cost of nursing care that she incurred when plaintiff did not appear for his parenting time with Adam:

> A custodial parent who seeks reimbursement for child support based on the premise[] that the non-custodial parent has failed to utilize his visitation time is routinely denied because money already paid was for the benefit of the child, and presumably used for the child. See J.S. v. L.S., 389 N.J. Super. 200-06 (App. Div. 2006).

The judge's assertion that the denial of defendant's application under these circumstances is "routinely denied" is not supported by the facts of J.S. or the compelling facts we confront

---

[3]  The actual wording of this particular section of the order contains a ministerial error that mixed up the parties designation in this litigation, giving plaintiff the relief intended for defendant.  The judge corrected this error in her Amplified Opinion.

here. In J.S., the defendant sought reimbursement of court-ordered child support after a paternity test revealed he was not the child's biological father. J.S., 389 N.J. Super. at 201-02. The trial court granted the defendant's application to relieve him of his obligation to pay child support, but denied his request to compel the plaintiff to reimburse him for the child support he previously paid. Id. at 203. In affirming the trial court's decision, we held:

> We are not persuaded by defendant's argument that he should be entitled to recoup his money from plaintiff either because of her deceit or because she has been unjustly enriched by her use of the money to care for her child. As the Court has explained, "[b]ecause the responsibility to support runs from parent to child, not parent to parent, the custodial parent was not 'unjustly enriched' by receiving sums and considering them [] payments for the support of their children." "Each parent has a responsibility to share the costs of providing for the child while [he or] she remains unemancipated."
>
> [Id. at 205-206 (emphasis added) (first quoting Pascale v. Pascale, 140 N.J. 583, 592 (1995); then quoting Martinetti v. Hickman, 261 N.J. Super. 508, 512 (1993)).]

The facts and underlying public policy that formed the basis of our decision in J.S. stand in sharp contrast to the salient facts of this case. Here, defendant seeks to enforce the provisions in the PSA that expressly addresses the need for plaintiff to honor his parenting time obligations to Adam and

provides the precise remedy defendant seeks to enforce. Article

III, Section 3.2(c) of the PSA provides, in relevant part:

> The [plaintiff] must make every effort to avoid the oversea[s] trip that interferes with his regular parenting obligation. The [plaintiff] will show proof of [the] necessity of an oversea[s] trip upon [defendant's] request . . . Within any 12-month period the number of interrupted parenting weekend oversea[s] trip[s] shall not exceed 4 times. <u>The [plaintiff] shall not travel for two or more consecutive weekends due to the respite relief required by [defendant]</u>.
>
> [(Emphasis added).]

Subsection 3.2(d) further provides, in relevant part:

> It is agreed that if any party does not fulfill his/her obligation toward scheduled parenting time due to reason[s] other than their own sickness . . . <u>the other party may ask for reimbursement for additional expenses related to the child care</u> . . . <u>these expenses may include but [are] not limited to childcare expenses at the market rate of a professional nurse</u>.
>
> [(Emphasis added).]

In the certification dated October 11, 2016 that defendant submitted to the Family Part in support of her motion, defendant alleges that that plaintiff has not fulfilled his parenting time obligation for the past nine months. She claims plaintiff's dereliction has seriously affected her health and compromised her financial situation. She averred:

> I really do not know how long I can last without a break. I have no money to advance in [Adam's] child care expenses during [p]laintiff['s] absent parenting obligations . . . [because] all private self[-]pay nurses must be paid at the end of each shift and private nurses [are] much cheaper than a nursing agency. Setting up an account [to] allow[] nurse[s] [to be] paid by [p]laintiff directly is the only option with him overseas. Otherwise, I have no money [to] pay, [and] [Adam] ultimately will be the one suffering when I have to sleep and cannot respond to his medical demands.

Defendant was also concerned about the possible collateral consequences plaintiff's relocation to China may have on his responsibility to provide health insurance coverage to Adam. In her certification, defendant noted that under Article X, Section 10.5 of the PSA: "In the event the [plaintiff] does not have medical insurance through his employment, he shall replace same at his sole expense with a similar policy for the children providing comparable coverage . . . ." Among the seventeen enumerated requests for relief defendant listed in her July 25, 2016 pro se application, defendant specifically sought a court order to compel plaintiff to continue his employment-related insurance coverage for Adam or assume personal financial responsibility for the child's medical needs in the event the policy was no longer available.

In the Amplified Opinion, the motion judge found, "while [defendant's] certification tells a perhaps compelling story, she points to no specific estimates or evaluations of what a temporary caregiver would cost or any other examples. Regardless of this substantive deficiency, again defendant failed to [satisfy] the obligations as set forth in [Rule] 5:5-4(a)." However, the judge also made clear that defendant's application was denied "without prejudice."[4]

The motion judge's observation concerning defendant's failure to provide an updated CIS as required by Rule 5:5-4(a) is correct. However, under the prevailing circumstances, the court has a parens patriae responsibility to Adam to ensure plaintiff's decision to relocate to China does not adversely affect this special-needs child's best interest. See Fawzy v. Fawzy, 199 N.J. 456, 474-75 (2009). In this light, we now turn to the relevant standard of review.

To modify a custody order or a consensual agreement on custody, courts follow the procedural framework outlined in Lepis for modification motions. First, the court must determine if the party seeking relief has made a prima facie showing of changed

_____

[4] Every decision made by the Family Part that involve the financial welfare of children is subject to revision or modification based on changed circumstances. See Lepis v. Lepis, 83 N.J. 139, 151 (1980).

A-1904-16T1

circumstances. <u>R.K. v. F.K.</u>, 437 N.J. Super. 58, 62 (App. Div. 2014). If the party makes this initial showing, she is "'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order.'" <u>Costa v. Costa</u>, 440 N.J. Super. 1 (App. Div. 2015) (quoting <u>R.K.</u>, 437 N.J. at 62-63).

In assessing whether there are requisite changed circumstances, the court must consider the circumstances that existed when the court made the original determination. <u>Sheehan v. Sheehan</u>, 51 N.J. Super. 276, 287-88 (App. Div. 1958). The focus of every judicial determination about custody and parenting time is "on the 'safety, happiness, physical, mental and moral welfare' of the children." <u>Hand v. Hand</u>, 391 N.J. Super. 102, 105 (App. Div. 2007) (quoting <u>Fantony v. Fantony</u>, 21 N.J. 525, 536 (1956)). However, as a general rule, hotly contested cases

> often turn on credibility determinations, which by their nature are impeded when the trial court cannot make first-hand observations of the witnesses. Additionally, the absence of live testimony obstructs the trial court's ability to obtain additional details that may be necessary to augment or clarify information contained in the documentary evidence, potentially impairing the judge's ability to make more detailed factual findings. In short, . . . submitting . . . documents in lieu of testimonial evidence, fails to allow the judge to resolve

12

> disputed issues or make credibility determinations.
>
> [Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 353 (App. Div. 2016).]

Here, the motion judge must make a fact-sensitive assessment of the impact plaintiff's relocation has had on his financial and emotional responsibility to help Adam cope with his special needs. The parties must submit updated CIS's to allow the judge to determine whether modification of plaintiff's child support obligation is warranted. Based on the evidence presented, the judge must determine whether plaintiff is required to reimburse defendant for expenses she incurred when plaintiff failed to honor his parenting time obligations, pursuant to Subsections 3.2(c) and (d) of the PSA.

Furthermore, because Adam has reached the age of majority, the court may also consider whether it would be in his best interest for the parties to establish a special needs trust. The Supreme Court had the opportunity to address and clarify this approach in J.B. v. W.B., 215 N.J. 305 (2013). Writing for a unanimous Court, our colleague Judge Cuff explained some of the benefits of this type of trust:

> A special needs trust in conjunction with a thoughtful plan to gain eligibility and receipt of government benefits, including Medicaid, SSI, and Division of Developmental Disability (DDD) programs, permits a family

A-1904-16T1

> to provide health care, income, housing, and vocational services for their disabled, dependent child. The redirection of a child support obligation from a parent to a trust designed to meet the present and future needs of the dependent, disabled child should not be considered exceptional or extraordinary relief, if such a plan is in the best interests of the unemancipated child.
>
> [J.B., 215 N.J. at 329-339.]

If the circumstances warrant it, the court also has the discretionary authority to appoint a guardian ad litem to represent the best interests of the child. Id. at 332-33; R. 5:8B.

We thus reverse and remand for the court to conduct a plenary hearing to enable defendant to testify and present evidence in support of her request for relief. Plaintiff may petition the Family Part judge to participate at this hearing remotely from China, via some form of electronic, audio-visual arrangement. In deciding whether to grant such a request, the judge must apply the two-part test first established by this court thirty years ago in Aqua Marine Prods., Inc. v. Pathe Comput. Control Systs. Corp., 229 N.J. Super. 264, 275 (App. Div. 1988), and subsequently adopted by our Supreme Court in State v. Santos, 210 N.J. 129, 141 (2012).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1904-16T1